UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

COLE GARRETT BOUGIE,

Plaintiff,

v.

UPPER PENINSULA STATE BANK, et al.,

Defendants.
_______________________________/

Case No. 2:26-cv-00057

Hon. Hala Y. Jarbou
Chief U.S. District Judge

**REPORT AND RECOMMENDATION**

## I. Introduction

This Report and Recommendation (R. & R.) addresses Defendants' motions to dismiss. ECF Nos. 5 and 6.

*Pro se* Plaintiff Cole G. Bougie filed this lawsuit on March 12, 2026, against Upper Peninsula State Bank (UPSB) and Peninsula Federal Credit Union (PFCU). ECF No. 1. Plaintiff's complaint alleges lender liability; a claim under the Unfair, Deceptive, or Abusive Acts or Practices Act (UDAAP); slander; and breach of fiduciary duty. Plaintiff claims that he became involved with Paige, a female employee of Defendant UPSB.[1] That relationship allegedly started a series of events outlined in the complaint that ultimately caused Plaintiff to lose his $2.2 million dollar per year business. Plaintiff took out business loans from both Defendant banks. He defaulted on the loans, but he asserts that Defendants took no action to help him.

[1] Plaintiff alleges that Paige is now his wife and they have four children. He asserts that UPSB "scared" Paige "into signing a Non-Disclosure Agreement (NDA) back in 2018." ECF No. 1-1, PageID.6.

Plaintiff seeks damages in the amount of $27 million dollars from Defendant UPSB and $1 million dollars from Defendant PFCU. Plaintiff further requests that "all of the bad debt and any taxes still owed by Bougie, Inc, and the value remaining on the Deed-In-Lieu of Foreclosure, to be paid off and wiped out." *Id.* 9-10.

Defendants move to dismiss Plaintiff's complaint. For the reasons set forth below, it is respectfully recommended that the Court grant Defendants' motions to dismiss.

## II. Factual allegations

Bougie says that he began dating UPSB employee Paige in February of 2017. ECF No. 1-1, PageID.6. Paige was allegedly also having an "affair" with Plaintiff's "banker and loan officer" and UPSB tried to cover-up the affair. *Id.* Paige became pregnant in July of 2017, and Bougie had to pay for a paternity test "to make sure the baby was [his]." *Id.* Bougie says that despite his complaints to UPSB President Williams, nothing was done to help him. *Id.*

Then, Plaintiff says that Williams first denied him financing due to his "character issues" only to later give him a loan that "was a very unfair deal." *Id.* Bougie says that in 2019, Williams phoned him and told him "that if [he] found someone that had good enough credibility, [he] could get a $60,000 Line of Credit." *Id.* Plaintiff says that he found someone but never received the line of credit and he had to get a loan from "Bluevine." *Id.* Bougie says that he tried to get help from UPSB Board member Bink, but Bink told him that he could not help. *Id.*, PageID.7.

Bougie alleges that he was "stuck at UPSB batting through all the crookedness, and along comes Covid." *Id.* He filled out paperwork for the Payroll Protection (PPP) loan but UPSB employee Salo refused to process it stating that he did not qualify for the loan. *Id.* Bougie says that mBank processed the loan and he received "around $90,000 to help with business operations." *Id.*

On January 4, 2021, Plaintiff says that UPSB froze his business checking account and "returned my large valued holiday vendor payments, seized roughly $78,000" and started foreclosure proceedings. *Id.* Bougie concedes that he was delinquent on his loan but he says, "they would not help and support me." *Id.*

When Bougie contacted board member Kirby, Kirby allegedly responded: "Young man, you've made a lot of mistakes, and the only way we're going to talk with you and help you, is if you come waking in here with some money." *Id.* Plaintiff alleges that when his employee attempted to the deposit a payroll check at UPSB, his employee was told that he could not deposit that check at UPSB because UPSB was no longer conducting business with Bougie, Inc. *Id.*

Bougie alleges that PFCU "did not support the original verbal promises" made when he obtained financing. *Id.*, PageID.8. As a result, he had to give up his business and sign a deed in lieu of foreclosure. *Id.* In early 2023, at least one PFCU employee "was telling the public that I was going to be getting foreclosed." Bougie alleges that he called PFCU employee Cheryl "to let her know that that's not cool." *Id.* He alleges that no one at PFCU "truly supported [him] whatsoever." *Id.*

## III. Motion to Dismiss

Defendant UPSB filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and 12(b)(1). Defendant PFCU filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6). The Federal Rules provide that a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Put differently, if plaintiffs do "not nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a claim has facial plausibility, a court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Those factual allegations "must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (internal citations omitted). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items

appearing in the record of the case and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.*

A motion to dismiss based on Federal Rule of Civil Procedure 12(b)(1) addresses whether the court has subject-matter jurisdiction to hear the dispute. *See* Fed. R. Civ. P. 12(b)(1); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (holding that a court "must dismiss the complaint in its entirety" when it lacks subject-matter jurisdiction over a matter). When challenged by a motion filed under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction. *E.E.O.C. v. Hosanna-Tabor Evangelical Lutheran Church and School*, 597 F.3d 769, 776 (6th Cir. 2010), *rev'd on other grounds*, 565 U.S. 171 (2012). A motion to dismiss for lack of subject matter jurisdiction may take the form of a facial challenge, which tests the sufficiency of the pleading, or a factual challenge, which contests the factual predicate for jurisdiction. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 890–91 (3d Cir. 1977)). In a facial attack, the court accepts as true all the allegations in the complaint, similar to the standard for a Rule 12(b)(6) motion. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In a factual attack, the allegations in the complaint are not afforded a presumption of truthfulness and the district court weighs competing evidence to determine whether subject matter jurisdiction exists. *Id.*

## IV. Analysis

Bougie alleges that this Court has federal question jurisdiction. ECF No. 1, PageID.3. This Court has original subject matter jurisdiction over actions that involve "federal questions" that arise under the Constitution, federal law, or treaties of the United States. 28 U.S.C. § 1331. "As courts of limited jurisdiction, federal courts may exercise only those powers authorized by the Constitution and statute." *Fisher v. Peters*, 249 F.3d 433, 444 (6th Cir. 2001). Federal courts have an on-going obligation to examine whether they have subject-matter jurisdiction over an action and may raise the issue *sua sponte*. *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

Plaintiff, arguably, has asserted one federal claim in his complaint. Plaintiff alleges that Defendants violated the UDAAP Act. UPSB argues that this Court lacks subject matter jurisdiction because none of Plaintiff's asserted claims arise under federal law. Nor can Plaintiff's UDAAP Act claim save his complaint from dismissal because no private cause of action exists under the Unfair, Deceptive, or Abusive Acts or Practices Act. 12 U.S.C. § 5536. The Supreme Court has recognized that "federal jurisdiction cannot be based on a frivolous or insubstantial federal question." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 817 (1986).

The UDAAP Act was created under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"). Courts that have considered a private party's claim asserted under the UDAAP Act have dismissed the claim, ruling that no private cause of action exists under the Act. *See*, *Downing v. Truist Fin. Corp.*,

No. 2:23-CV-2469-JTF-ATC, 2024 WL 900232, at *4 (W.D. Tenn. Mar. 1, 2024) ("every court that has addressed this issue has found no private cause of action exists"). Plaintiff has not responded to Defendant's argument by showing that a private cause of action exists under the UDAAP Act. In the opinion of the undersigned, Plaintiff's UDAAP Act claim does not state an actionable cause of action. Since federal jurisdiction may not be based upon a frivolous or insubstantial question of law, the UDAAP Act claim cannot provide the basis for this Court's jurisdiction.

This leaves Plaintiff with only the remaining state law claims listed in his complaint under "the Basis of Jurisdiction" section, where he asserts claims of lender liability, slander, and breach of fiduciary duty. ECF No. 1, PageID.3. Each of these claims arises under Michigan law. Bougie does not fully explain the basis for his "lender liability" claim. Such a claim, if it exists, arises under Michigan law. *See Huntington Nat. Bank v. Daniel J. Aronoff Living Tr.*, 305 Mich. App. 496, 507, 853 N.W.2d 481, 487 (2014) ("It is not clear that Michigan recognizes a defense whereby a borrower can avoid liability under a lawfully made note by pleading and proving that the lender engaged in wrongful conduct unrelated to that note. From their allegations, however, it is clear that defendants' 'lender liability' defense is more aptly characterized as a breach of contract"). Moreover, Bougie has not pleaded any basis for the Court to conclude that his "lender liability" claim implicates a federal question.

Similarly, breach of a fiduciary duty claim arises under state law. *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 383 n.7 (1996). "Michigan case law has characterized a claim for breach of fiduciary duty as a common law tort." *Borock v.*

*Comerica Bank-Detroit*, 938 F. Supp. 428, 430 (E.D. Mich. 1996). Further, defamation and slander claims are matters of state law. *Perry v. Monroe Co.*, No. 2:16-CV-10764, 2016 WL 895072, at *2 (E.D. Mich. Mar. 9, 2016) ("claims for defamation and/or slander . . . are state law claims and do not involve the violation of any rights secured by the federal Constitution or the laws of the United State"). In the opinion of the undersigned, the Court may dismiss this action for lack of subject matter jurisdiction.

Alternatively, because no private right of action exists under the UDAAP Act, the Court could dismiss that claim and decline to exercise supplemental jurisdiction over the remaining state law claims. In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, when a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

As another alternative, the Court may choose to dismiss each of Plaintiff's claims because the complaint fails to state a claim upon which relief may be granted.

First, Plaintiff has made no effort to show how Defendants violated the Dodd-Frank Act, which apparently forms the basis of his UDAAP Act claim. As set forth above, Plaintiff has failed to state a UDAAP Act claim by establishing that he has a private right under the Act to enforce violations of the UDAAP Act. *Downing*, 2024 WL 900232, at *4. Nor has Plaintiff set forth any acts by Defendants that could be characterized as unfair, deceptive, or abusive.

Under Michigan law, an action against a financial institution, such as a bank or credit union for a violation of the terms of a loan or agreement (lender liability) must be based upon the written instrument. *Crown Tech. Park v. D&N Bank, FSB*, 242 Mich. App. 538, 550, 619 N.W.2d 66, 72 (2000).

> MCL 566.132(2); MSA 26.922(2) expressly states that "[a]n action *shall not be brought against a financial institution* to enforce [a promise or commitment to waive a provision of a loan] unless the promise or commitment is in writing and signed with an authorized signature by the financial institution" (emphasis supplied). This language is unambiguous. It plainly states that a party is precluded from bringing a claim—no matter its label—against a financial institution to enforce the terms of an oral promise to waive a loan provision.

*Id*. *See Huntington Nat. Bank v. Daniel J. Aronoff Living Tr.*, 305 Mich. App. 496, 509, 853 N.W.2d 481, 488–89 (2014) (an action against a financial institution must be based upon the written instrument. This rule "applies to a 'promise or commitment' . . . to 'lend money.' MCL 566.132(2)(a)").

Here, Bougie has failed to identify any breach of a written loan agreement. Bougie alleges that he entered into loan agreements with the bank and credit union and that he was delinquent on the loans. He alleges that Defendants should have further helped him so that he did not lose his business. Bougie does not allege that

Defendants breached the terms of the loan agreements. Nothing within Plaintiff's complaint states a claim upon which relief may be granted for "lender liability" against Defendants.

Similarly, Plaintiff has failed to set forth factual allegations in his complaint that could establish a breach of a fiduciary duty owed to him by Defendants. "At a minimum, a viable claim for the breach of fiduciary duty must include facts alleging: '(1) the existence of a fiduciary duty, (2) a breach of that duty, (3) proximately causing damages.'" *Fisher v. Perron*, 30 F.4th 289, 299 (6th Cir. 2022). Plaintiff has presented no facts to indicate that Defendants owed him a fiduciary duty under Michigan law or that Defendants breached a fiduciary duty that they owed. "Under Michigan law, the general rule is that a lender owes no fiduciary duty to a borrower, and there is generally no fiduciary relationship between a lender and a borrower." *In re M.T.G., Inc.*, 646 B.R. 1, 105 (Bankr. E.D. Mich. 2022), *aff'd,* No. 2:22-CV-12661, 2024 WL 5695966 (E.D. Mich. Sept. 30, 2024), *aff'd,* 164 F.4th 564 (6th Cir. 2026); *Prime Fin. Servs. LLC v. Vinton*, 279 Mich. App. 245, 277, 761 N.W.2d 694, 714 (2008) (debtor-creditor relationship does not establish a fiduciary duty).

Plaintiff has failed to plead any exceptions to this general rule – for example, Plaintiff has not asserted factual allegations which could establish that he is weak minded, easily influenced or dominated, mentally impaired, or that he lacked the necessary business experience to enter into a loan agreement with a financial institution. *Id.* at 106-108; *see also Glidden Co. v. Jandernoa*, 5 F. Supp. 2d 541, 549 (W.D. Mich. 1998) ("[O]nly where the debtor is so 'easily dominated, old, or weak-

minded,' and reliance upon the lender for business making decision is inevitable may a reposing of trust be a basis for finding that there is a fiduciary duty owed"). Rather, Bougie has set forth facts in his complaint that establish that he obtained normal business loans from Defendants to assist him while he ran a highly successful business that allegedly made him "$2.2 million per year". ECF No. 1-3, PageID.9. Bougie has failed to set forth facts showing the existence of a fiduciary duty, that Defendants breached a fiduciary duty, and that he suffered damages due to a breach of the fiduciary duty.

Bougie asserts a slander claim because "at least one (1) of the PFCU employees was telling the public that I was going to be getting foreclosed on (which I never was), and it was said to my employee Becky, out in the public at a bar, and it got back to me." ECF No. 1-2, PageID.8. Bougie does not identify any other statements that were made that were allegedly untrue that could constitute defamation.

> In Michigan, slander is oral defamation. *Brode v. Bosquette & Co., Inc.*, Case No. 09-14212, 2011 WL 3648263, at *6 (E.D. Mich. Aug. 18, 2011). To state a claim for defamation under Michigan law, a plaintiff must plead "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault, amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Cole v. Knoll, Inc.*, 984 F. Supp. 1117, 1134 (W.D. Mich. 1997).

*Satgunam v. Kiley*, No. 1:19-CV-886, 2020 WL 13546501, at *2 (W.D. Mich. Nov. 12, 2020). Slander *per se* exists where the words spoken are false and malicious and are injurious to a person in his or her profession or employment. *Croton v. Gillis,* 104 Mich. App. 104, 108-109, 304 N.W.2d 820 (1981). Bougie failed to identify or even

name the person in his lawsuit that allegedly slandered him, or state with specificity the alleged statement, or explain how the alleged statement was false. Further, Bougie fails to identify any harm to him based upon the alleged statement. In the opinion of the undersigned, Bougie has failed to state a defamation claim against Defendants.

Additionally, based upon the allegations in the complaint, some of Plaintiff's claims are barred by the applicable statute of limitations period. Under Michigan law, breach of fiduciary duty has a three-year statute of limitations. *Borock v. Comerica Bank-Detroit,* 938 F. Supp. 428, 430 (E.D. Mich. 1996). Plaintiff alleges that UPSB began foreclosure proceedings based upon his loan delinquency in January of 2021, and that by 2022, he began moving his business accounts to PFCU. In the opinion of the undersigned, Plaintiff's fiduciary duty claims against UPSB are barred under Michigan's three-year statute of limitations period.

Further, in Michigan the statute of limitations is one year for a slander claim. Mich. Comp. Laws § 600.5805(11). A slander claim accrues when the publication occurs, not when the plaintiff discovers it. *Winkler v. Federal-Mogul Corp.*, No. 1:09-cv-745, 2010 WL 11688595, at *9 (W.D. Mich. Nov. 18, 2010). Here Plaintiff alleges that the alleged slander occurred in 2023. Bougie's 2026 lawsuit was filed well past the one-year statute of limitations for defamation claims.

Finally, Plaintiff alleges that after he defaulted on his loans with PFCU, they started proceedings to recover the loan amounts owed. ECF No. 1-2, PageID.8; ECF No. 6-1. Plaintiff alleges that to resolve his defaulted loans, he signed "a Deed-In-

Lieu of Foreclosure with PFCU" in 2024. *Id.*; ECF No. 6-3. Plaintiff does not explain how PFCU violated his rights. He alleges that "[t]hey let the power of money and the influence of the community, affect the decisions and support of all of my financing moving forward. After 28 months of unbearable battling and stress, and begging and pleading", he entered the settlement agreement by signing the Deed-In-Lieu of foreclosure. *Id.* The Settlement Agreement stated:

> **NOW, THEREFORE,** in lieu of Credit Union commencing mortgage foreclosure proceeding and/or taking other action permitted by law to exercise its rights and remedies under said mortgages and/or collect on Loans 750 and 810, and for other valuable consideration, the Parties have agreed as follows:

ECF No. 6-1, PageID.67.

> 7. **Entire Agreement**. The terms of this Agreement express the full and final settlement among the Parties and supersede any and all previous agreements, representations and understandings, whether written or oral or express or implied regarding the subject matter of this Agreement. This Agreement may not be changed, modified, terminated, or discharged except in writing and signed by the parties hereto.

*Id.*, PageID.69.

In executing this agreement and signing the deed, Plaintiff agreed to settle all claims against PFCU arising out of his loan agreements. Plaintiff has failed to make any allegations in his complaint that requires the Court to disturb that agreement.

In the opinion of the undersigned, Plaintiff's complaint fails to state a claim upon which relief may be granted.

## V. Recommendation

Accordingly, it is respectfully recommended that the Court dismiss this lawsuit due to lack of subject matter jurisdiction or because Plaintiff failed to state a claim upon which relief may be granted.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: September 25, 2026

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE